# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| J. JESUS TELLO-MARTINEZ, ) | No. 06-05016-01-CR-SW-FJG |
| ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant has filed a Motion to Suppress Evidence, in which he asserts that evidence seized as a result of his detention and arrest should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on October 4, 2006. Defendant was present with counsel, John H. Kizer, and the United States was represented by Douglas C. Bunch, Assistant United States Attorney.

The government first called Ronald Buchanan of the Joplin Police Department. On March 28, 2006, he came into contact with defendant as a result of being sent to the area after a dispatcher's call. A private citizen, Ann Lansdowne, had called the dispatcher to report an individual who was possibly intoxicated, driving a vehicle carelessly and almost hitting her. The woman said the vehicle was parked at a parking lot in Joplin, Missouri, by the Discount Liquor/Smoke Shop. Officer Buchanan went to that location, where a backup officer already was positioned, and saw the vehicle. The suspect wasn't in the vehicle at that time. The officer then contacted Ms. Lansdowne at the scene where the vehicle was parked. She pointed out the vehicle, reiterated that it had almost hit

1

her, and stated that she observed the driver walk into a liquor store, possibly wobbling or swaying. The officer noted that the vehicle did not have the required license plates properly displayed. Ms. Lansdowne agreed to sign a complaint, and as she was doing so, the driver came out of the liquor store. Ms. Lansdowne identified him as he came out. The backup officer contacted defendant as he approached the vehicle. Officer Buchanan went up to the vehicle, and let the backup officer know that they were going to arrest defendant, based on the information that they had and the signed complaint. He observed that defendant seemed very intoxicated, with a strong odor of intoxicants around him. He did not specifically remember asking for identification, but asking for a driver's license is standard procedure. At some point, he became aware that defendant did not have a valid driver's license in hand or on file, which was confirmed by the dispatcher. Defendant was arrested for not having a valid driver's license and for failure to properly display state plates. Officer Buchanan also learned, either at the scene or at the jail, that there was an immigration hold on defendant. He testified that it is standard procedure to run an NCIC or a MULES check, and information such as an immigration hold would been picked up and then confirmed by the dispatcher. Officer Buchanan did not recall what form of identification defendant provided at the scene, just that identification with his name and date of birth was provided by defendant. He identified the booking sheet from the jail, which indicated that the arrest occurred at 10:33 a.m., that defendant was processed by the jail at 11:56 a.m., and that the basis for the booking was an immigration hold.

On cross examination, the officer stated that the narrative report provided on September 11, 2006, was furnished at the request of the government. The report does not state that defendant appeared to be intoxicated. He acknowledged that defendant was not arrested for driving while

2

intoxicated. He admitted that Ms. Lansdowne's concern in signing the complaint was the operation of the vehicle. Had she not signed the complaint, Officer Buchanan stated that he would not have issued the ticket to defendant and would not have arrested him, unless an immigration hold showed up on the warrant check. He stated that defendant was not actually arrested until they had the confirmation from the dispatcher about defendant's driving status and the warrant check, which is usually run almost immediately. He did not think defendant spoke English very well, and he acknowledged that he did not speak Spanish. Although he couldn't remember specifically what defendant provided regarding identification, either verbally or through some paper document, they were able to obtain the information from the dispatcher regarding the lack of a valid driver's license. Officer Buchanan acknowledged that he did not see defendant do anything illegal. He was not sure exactly when they received the NCIC check about his immigration status and that defendant was an illegal alien, but the officers did have the information that defendant did not have a valid driver's license before he was arrested. The officer stated that, as a practice, if he stops someone without a valid driver's license, he arrests them, although he acknowledged that there are some to whom he just issues a ticket.

On redirect, Officer Buchanan reiterated that he had talked to Ms. Lansdowne at the scene, who provided the information regarding the erratic driving and almost getting hit, and he personally observed that the vehicle did not have license plates properly displayed.

The next witness for the government was Officer Eric Breitzke, Senior Special Agent for Immigration and Customs Enforcement ["ICE"]. He testified that his office received an intelligence record from their law enforcement support center located in Williston, Vermont. The report was prepared by Senior Agent Bruce Pelletier, and indicated that, at approximately 11:00 a.m. on March

28, 2006, it had received an NCIC hit confirmation from the Joplin Police Department regarding defendant. The report indicated that defendant was an alien who had been previously removed from the United States as a convicted felon. After defendant's identity was confirmed, ICE lodged a detainer with the Joplin Police Department.

Defendant testified on his own behalf. He stated that he encountered a police officer as he came out of a convenience store. The officer asked him for identification and his wallet, which he provided. He was then handcuffed and taken to the patrol car. The officer just took his wallet, and defendant did not give him any information regarding whether he had a driver's license. After he gave the officer his wallet, he was immediately placed in handcuffs.

On cross examination, defendant testified that he was not aware of what information the officers had before placing him in handcuffs and taking him to the patrol car.

It is defendant's position that there was no probable cause or reasonable suspicion to detain or arrest him, and that all the evidence should therefore be suppressed.

The government maintains that Officer Buchanan did not need a reasonable articulable suspicion of criminal activity to approach defendant in a public place and ask for his driver's license because actions of this type are not seizures under the Fourth Amendment. Even if they were, the government asserts that the reporting citizen's personal observations and identification of the vehicle and defendant as the driver gave Officer Buchanan reasonable suspicion that defendant had committed one or more crimes, that is, driving while intoxicated and careless and imprudent driving, which authorized him to detain defendant to investigate. After learning that defendant did not have a valid driver's license and did not have properly displayed license plates, it is contended that he then had probable cause to arrest defendant for these offenses

4

under Missouri law.

The government relies on United States v. Barry, 394 F.3d 1070 (8th Cir. 2005), to support its contention that Officer Buchanan did not need a reasonable articulable suspicion of criminal activity to approach defendant in a public place and ask for his driver's license because these actions are not seizures under the Fourth Amendment. In Barry, the Eighth Circuit held that an initial encounter between the police and a citizen does not implicate the Fourth Amendment unless "a police officer exerts his authority in such a way that the officer restrains a citizen's liberty." 394 F.3d at 1077-78. In that case, a police officer approached a vehicle parked in an alley behind closed stores at 11:18 P.M., and knocked on the window three times before the occupants finally responded. When the window was rolled down, he smelled marijuana and air freshener, at which time he determined that he had grounds to detain the occupants. The Eighth Circuit held that, until the time the officer asked the occupants to exit the vehicle, based on reasonable suspicion of wrongdoing, the occupants were not seized. The officer's conduct up until that point, which included driving his cruiser into the alley to see why the vehicle was there, shining his flashlight on his uniform and keeping his hand on his holstered gun, and knocking three times on the passenger side window, was simply a citizen-police encounter in a public place. There was no "threatening presence of several officers, the display of a weapon by an officer, some physical touching of a person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 394 F.3d at 1075, quoting United States v. Mendenhall, 446 U.S. 544, 555 (1980). It is clear that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions,

5

by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." Barry, 394 F.3d at 1074, quoting Florida v. Bostick, 501 U.S. 429, 434 (1991).

In this case, the testimony adduced at the hearing establishes that defendant was approached in a public place by two officers after a citizen report of erratic driving, which almost caused an accident, the driver possibly being wobbly or staggering as he entered a liquor store, and the identification of the driver and the vehicle by that citizen. There was no testimony nor indication whatsoever that the officers exhibited any show of force in contacting defendant. It cannot seriously be argued that the officers' actions in making contact with him ran afoul of the Fourth Amendment. In fact, Officer Buchanan "probably would have been remiss" had he not decided to approach defendant and ask for identification. 394 F.3d at 1075.

Even assuming, however, that asking defendant for identification did constitute a seizure under the law, it is clear that law enforcement officers are entitled to stop and briefly detain an individual for investigative purposes if there is reasonable suspicion that criminal activity may be afoot. United States v. Hill, 91 F.3d 1064, 1069 (8th Cir. 1996). In this case, at the point of the initial contact, in addition to the report from Ms. Lansdowne, Officer Buchanan had also observed that there were no properly displayed license plates on the vehicle. Further, Ms. Lansdowne was willing to sign a complaint. He also observed that, as he approached defendant, he seemed very intoxicated. While Officer Buchanan admitted that he had not seen defendant commit any driving offenses, he clearly had sufficient reasonable suspicion to briefly detain him and investigate the situation more fully. These actions were based on Ms. Lansdowne's account of the events and her identification of defendant and the vehicle, as well as his observations of

6

defendant not having a properly licensed vehicle and appearing to be intoxicated. Based on the totality of the circumstances, it is clear that Officer Buchanan could reasonably suspect that defendant may have been driving while intoxicated, driving in a careless and imprudent fashion, and/or driving without a properly licensed vehicle. Once he found that defendant did not have a valid driver's license, there was probable cause to arrest him under Missouri law. Accordingly, there is no basis to suppress the evidence. Therefore, it will be recommended that the motion to suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

/s/ James C. England<br>
JAMES C. ENGLAND, Chief<br>
United States Magistrate Judge

Date: October 30, 2006